CARUTHERS v. HADLEY.†

(Court of Civil Appeals of Texas. Dec. 24, 1910. On Motion for Rehearing, Feb. 18, 1911.)

1. JUDGMENT (§ 495*)—PROBATE COURTS—PRESUMPTION—COLLATERAL ATTACK.

A county court being a court of record and of general jurisdiction as to the estates of deceased persons, having assumed jurisdiction in partition of decedent's estate, all presumptions should be indulged in favor of the validity of its judgment, which could not be collaterally attacked for want of proof that it had jurisdiction to partition the particular estate.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 933; Dec. Dig. § 495.*]

2. JUDGMENT (§ 504*)—COLLATERAL ATTACK—PARTITION DECREE—VALIDITY.

A decree partitioning the land in controversy, though invalid for failure to sufficiently describe the land, was nevertheless admissible in trespass to try title to show that both plaintiff and defendant claimed from a common source.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 946; Dec. Dig. § 504.*]

3. TRESPASS TO TRY TITLE (§ 18*) — TITLE FROM COMMON SOURCE — TITLE IN THIRD PERSON.

Defendant in trespass to try title, where the parties claimed from a common source, may defeat the action by showing a superior outstanding title in a third person on proof of such title anterior to that of the common source, and that such prior title never vested in the common source.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 21; Dec. Dig. § 18.*]

4. TRESPASS TO TRY TITLE (§ 41*)—EVIDENCE—COMMON SOURCE—OUTSTANDING TITLE.

Where, in trespass to try title, there is proof that both parties claimed under a common source, it will be presumed that such common grantor had the title when he undertook to convey the title which defendant claimed, involving the assumption that he had acquired the title of all previous owners, so that proof that prior to that time a third person had the title was not sufficient to defeat the action.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

5. EVIDENCE (§ 274*)—DECLARATIONS OF PRIOR OWNER OF LAND—REMOVAL OF BOUNDARY LINE.

Where, in trespass to try title, both parties claimed under a common source, declarations of such common owner that the west boundary line of the survey had been moved east, and the division line in dispute also moved east from where it was originally established in order to

give purchasers the amount of land sold to them by the declarant, was admissible on an issue as to the establishment and location of such division line.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1133; Dec. Dig. § 274.*]

6. FRAUDS, STATUTE OF (§ 70*) — BOUNDARY LINE—ESTABLISHMENT AND RECOGNITION.

The removal of an established boundary line by landowners and subsequent recognition of the boundary line established is not obnoxious to the statute of frauds, though not in writing, or within the statutes regulating conveyances of real estate.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 112; Dec. Dig. § 70.*]

7. APPEAL AND ERROR (§ 742*) — RECORD — STATEMENT.

Where error was assigned to the refusal of a request to charge, but the statement under the assignment did not set out the testimony bearing on the question, and did not point out the page of the record where such testimony could be found, such assignment will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

8. BOUNDARIES (§ 41*)—ESTABLISHMENT—INSTRUCTIONS.

In trespass to try title involving a disputed boundary line, the court charged that, if the east and west lines of the H. tract which had been conveyed by S. the common source of title in 1884 were moved further east by S., and that the parties who then owned the H. tract consented to the change, and at that time S. owned all the land that was east of and adjacent to the H. tract and to the original east line of the survey, then all persons agreeing to the change and all parties who afterwards bought land from the common source of title which was adjacent to and east of the H. tract with notice that the east line of the H. tract had been moved east would be bound by the change. In another paragraph the court stated that if S. did not so extend the H. tract further east, or if, when defendant purchased his land, he had no notice of the fact, but bought to the west line of the strip in controversy, or if the H. lines were extended by the common source, but as extended no part of the same was within the inclosure of the defendant, the jury should find for him. Held, that such instructions constituted a correct application of the law to the facts, and covered a request to charge that, if in the subdivision of the survey when it was deeded to S. the division line between the two tracts on the west of defendant's land was recognized and acquiesced in and agreed upon by the parties as the true division line between the land owned by the defendant and the H. or G. tract, and at and just before defendant purchased the land S. pointed out the line to him as the true west division, and defendant on the faith of the acts of the parties thereafter purchased up to that line, then the jury should find for the defendant.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 205–207; Dec. Dig. § 41.*]

9. APPEAL AND ERROR (§ 742*) — RECORD — BRIEF—STATEMENT.

Where the only statement of facts attached to assignments of error to the court's refusal of certain charges in question was "the special instruction No. '7' (Tr. pp. 13–14) and special instruction No. '8' (Tr. pp. 11–13), are correctly copied in the assignment," the assignments will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Application for writ of error dismissed by Supreme Court.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by W. B. Hadley against R. W. Caruthers. Judgment for plaintiff, and defendant appeals. Affirmed. Motion for rehearing overruled.

See, also, 115 S. W. 80.

S. C. Padelford, for appellant. Odell & Johnson and Mitchell Davis, for appellee.

TALBOT, J. On the 30th day of April, 1906, the appellee instituted this suit against the appellant in the form of an action of trespass to try title to recover about 2½ acres of land, a part of the Dyer Nuner survey, situated in Johnson county, Tex. We think, however, that it is a boundary case involving the true location of the division line running north and south between the plaintiff's land on the west and the defendant's land on the east. The defendant answered by general denial, plea of not guilty, and the statutes of limitation of five and ten years. The case was tried before the court and a jury, and resulted in a verdict and judgment in favor of the plaintiff, and the defendant appealed.

The defendant requested the court to charge the jury to the effect that the evidence showed that the plaintiff was not the owner of the land in controversy, and therefore to return a verdict in favor of the defendant. This charge was refused, and the jury instructed in the first paragraph of the court's general charge "that the uncontroverted evidence shows that the plaintiff and the defendant are each claiming their respective lands in controversy from and under J. J. Snyder, who is the common source of title to each of them, and you are instructed that the deeds and instruments in writing, introduced in evidence by each party, are sufficient to vest the title to their respective tracts of land to each of them, except as their titles may be affected by the instructions hereinafter given you." The refusal of the one and the giving of the other of these charges is made the basis of several assignments of error, but the propositions contended for, in substance, are that the plaintiff failed to deraign title from the state or to show that he and the defendant claimed title from a common source; that the uncontradicted evidence showed that J. J. Snyder, who the court charged was the common source of title, in 1871, long anterior to the purchase of any of the parties under whom the plaintiff claimed, had by warranty deed conveyed all the land in controversy to one J. A. Snyder, and there was no evidence that the said J. J. Snyder subsequent to his conveyance to the said J. A. Snyder had reacquired the title to said land, or that the defendant claimed through J. A. Snyder, therefore a superior outstanding title was shown, and the trial court erred in not instructing a verdict for the defendant as requested by him. The plaintiff did not, as contended by the appellant, deraign his title from the state,

but we think the evidence very clearly shows that he and the appellant claimed title to the land from a common source. The land was patented to Dyer Nuner, but no conveyance was shown from him to any one. J. J. Snyder purchased the entire Nuner survey from Samuel R. Smith, and received a deed therefor on the 4th day of December, 1861. From whom Smith purchased does not appear. J. J. Snyder took possession of the land, and sold the greater portion of it to different parties before his death, which occurred in 1887. It was shown that J. J. Snyder on the 18th day of February, 1884, conveyed the land claimed by the appellee to W. D. Hall and H. T. Hall, and that the title thereto by mesne conveyances was passed to and vested in the appellee. It was also shown, as we understand the evidence, that the land claimed by the appellant was in the possession of and claimed by J. J. Snyder at the date of his death; that the same by partition made between his heirs in the county court of Johnson county, Tex., passed to his son, H. C. Snyder, and his daughter, Mrs. M. A. Barry, and thence by a regular chain of conveyances to the appellant. Appellant, however, contends, in effect, that the decree of partition referred to above is void and cannot be considered as a link in the chain of his title, because there was nothing showing that the county court of Johnson county, Tex., had jurisdiction to partition the estate of J. J. Snyder, deceased, and because of uncertainty in that it does not describe any real estate whatsoever. We think this contention should not be sustained. The county court of Johnson county is a court of record and of general jurisdiction in all matters pertaining to the estates of deceased persons, and, having assumed jurisdiction in the matter of partitioning the estate of J. J. Snyder, all presumptions will be indulged in favor of the validity of its judgment, and it cannot be attacked collaterally as attempted in this case. As to the claim that the decree of partition in question is void for uncertainty in that it does not describe the land set apart to Mrs. Barry and H. C. Snyder, it may be said that, while said decree does not describe the land by metes and bounds, it does "allot and set apart to Mrs. Barry and H. C. Snyder each one-half of all the remaining interest in the Dyer Nuner survey in Johnson county, Tex., which the said J. J. Snyder owned at the time of his death," and the testimony shows that the land claimed by appellant came into the hands of J. J. Snyder's administrator as a part of his estate, was not sold by said administrator, and went into the possession of Mrs. Barry and H. C. Snyder after the decree of partition was rendered, and acts of ownership exercised by them over it without objection on the part of any one. But, if it should be conceded that for either of the reasons urged by appellant said decree was void, still it was admissible in evidence to be considered in determining the

question whether or not the plaintiff and the defendant claimed title from a common source. A deed or other muniment of title introduced which shows such a claim by the defendant is sufficient, although it may be from some cause inoperative. "A void tax deed purporting to evidence the sale of land as the property of an owner named may be used to show the claim of title by a defendant when sued by some one claiming from the same source." Burns, Guardian, v. Goff, 79 Tex. 236, 14 S. W. 1009; Garner v. Lasker, 71 Tex. 433, 9 S. W. 332.

The next question is: Did the appellant, by proving that the land in controversy had been conveyed by J. J. Snyder to J. A. Snyder, in 1871, anterior to the purchase of any of the parties under whom the appellant claims, show a complete defense to the appellee's action? We think not. It is well settled that when the plaintiff has proved that he and the defendant claim title to land from a common source, and that of the two titles emanating from that source his is the superior, and while the defendant, notwithstanding the proof of the insufficiency of his title under the common source, may still defeat the action by showing a superior outstanding title in a third party, without connecting himself with such superior title, yet, in order to do so, he must prove affirmatively not only that some one had the title anterior to that of the common source, but also that such previous title never vested in the common source. Rice v. Railway Co., 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72. In the case cited, after announcing the rule above stated, the Supreme Court of this state says: "But, as we understand it, all the authorities hold that, when one accepts a conveyance from another, it is at least prima facie evidence, as against the grantee, of title in the grantor. It follows that, if a plaintiff in an action of trespass to try title proves that he has acquired the title of such grantor—for example, that he has the only or elder valid conveyance of such title—he shows a right to recover, provided there be no sufficient evidence to rebut the presumption arising from an acceptance by the defendant of the deed of his grantor. Does mere proof that some one held a title anterior to the time at which the grantor undertook to convey show that at that time he had no title? Certainly not. A state of things once shown to exist is ordinarily presumed to continue, in the absence of proof to the contrary. But here the very point presents itself upon which the determination of the question under consideration must turn. Evidence that the defendant claims title under the common grantor is prima facie proof that such grantor had the title at the time he undertook to convey the right which the defendant claims; and this necessarily involves the assumption that he had acquired the title of all previous owners. The rule as to proof of common source means this, if it means anything. The rule is statutory in this state; and to permit a defendant to defeat its operation by showing the naked fact that previous to the time the grantor undertook to convey some third party had the title would render it nugatory. To show that the title to the land in controversy was in some third person before the Cleveland brothers claimed it is merely to prove what we knew before, and falls far short of showing that the title was not in them when the decree of partition was rendered. In other words, proof of title in Morgan does not overcome the prima facie case made by the plaintiff when he introduced evidence showing that defendants derived their title through deeds which purported to convey the land as the property of Lafayette Cleveland." The defendant did not affirmatively show that the previous title of J. A. Snyder did not vest in the common source from which appellee and appellant claim before the subsequent conveyance of J. J. Snyder, and we are of the opinion that the case at bar falls within the principle of the case from which the above quotation is made, and is not ruled, as contended by the appellant, by the case of Ferguson v. Ricketts, 93 Tex. 565, 57 S. W. 19. We are strengthened in this view, perhaps, by the fact that the evidence shows that J. A. Snyder was the son of J. J. Snyder, and that in 1884, when the latter conveyed the land now claimed by the appellee to W. D. and H. T. Hall, he, J. J. Snyder, was in possession of said land and also of the land claimed by appellant, and dealing with both tracts as his own.

There was no error in admitting the testimony of Long and Hadley to the effect that J. J. Snyder told them that as the west boundary line of Dyer Nuner survey had been moved east that it cut off some land from those people to whom he had previously sold, and that he had moved the line, the true location of which is in dispute in this suit, 42 varas east of where it was originally established, in order to give those people the complement of land that he sold them. The evidence was insufficient to show an outstanding title in J. A. Snyder of the land in controversy at the time these statements were made. J. J. Snyder was in possession of and the owner of the land east of and adjacent to said original line at that time, and the evidence shows the owners of the land west of said line consented to the moving of it east and to the point where it was then established. The appellant was claiming under J. J. Snyder, and the said Snyder's acts and statements in reference to the establishment and location of the division line in question were admissible.

The seventeenth assignment of error complains that the court erred in refusing to read to the jury appellant's special charge, to the effect that if the east boundary line of the Hall and Corley surveys was marked and designated by a stone at the south boundary

line, and by marked trees along its eastern boundary line, and that this line was run and marked upon the ground at and before the time of the deed from J. J. Snyder to Walraven, and from J. J. Snyder to the two Halls, the first of said deeds being made in 1882, and the other in 1884, and that this line was so designated at or before the execution and the making of said two deeds, does not include any of the land in controversy, and is where the defendant's fence is now located, to find for the defendant. The only proposition under this assignment is that "a party cannot by parol substitute one boundary line for another, and thus by such parol testimony convey real estate, as, under the statute of frauds, real estate cannot be conveyed except by an instrument in writing." We think there was no error in refusing this charge. The evidence, as we understand it, shows that J. J. Snyder discovered after he had sold and conveyed a part of the Dyer Nuner survey that the west boundary line of said survey, as called for in said conveyances, was located about 42 varas too far west; and, to correct this mistake and still give to the parties who had purchased or some of them the quantity of land bought by them, respectively, it became necessary to move and establish the east line of such tract 42 varas east of its original location; that to this end the division line between the lands now owned by the appellant and appellee was moved and established 42 varas east of its original location by the consent of the parties then owning said lands, and through whom both the appellee and appellant claim. Such an establishment and recognition of boundary lines is not obnoxious to the statute of frauds or within the statute regulating the conveyances of real estate.

Appellant's twenty-first assignment complains of the court's refusal to give the following special charge: "You are further instructed that if you find that in the subdivision of the Dyer Nuner survey, when the same was sold and deeded by J. J. Snyder, the division line between the tract known as the Grogan and Corley tracts on the west of the defendant's land and the land owned by H. C. Snyder lying east of the said tract was recognized and acquiesced in, and agreed upon by said parties, as a true division line between the land owned by the defendant and the Hall or Grogan tract of land, that at and just before the defendant purchased said land the said Snyder pointed out said line to him as the true western division line of his the said H. C. Snyder's land, and that the said Grogan, while he was in possession of the said land, pointed the same out to the defendant as the true eastern boundary line of the said Hall or Grogan tract, and that the defendant upon the faith of said acts of said parties thereafter purchased up to said line, then, and in such case, without further inquiry, you will find for the defendant, and so say by your verdict." The statement made in support of this assignment or the proposition thereunder is insufficient to warrant us in saying the court erred in refusing this charge. The statement does not set out the testimony bearing upon the question, so that this court may determine its force and effect, but simply states the conclusion or deduction of the appellant as to what said testimony showed. Nor does it point out the page or pages of the record where such testimony may be found. We are not required to search the record for the testimony, and, the same not being set forth in the statement under the assignment, we are unable to determine whether or not appellant's deduction was a proper one to be drawn from it. It must therefore be presumed in favor of the court's ruling that the testimony did not call for the charge refused in the form in which it was drawn. Looking, however, to the court's general charge, we think it sufficiently covers the special charge refused. In the second paragraph of the court's general charge the jury were told, in effect, that if the east and west lines of the Hall tract, which was deeded to Hall in 1884, were moved farther east by J. J. Snyder than they had formerly been, and that the parties who then owned the Hall tract agreed and consented to said change, and that at that time J. J. Snyder owned all of the land that was east of and adjacent to the Hall tract and to the original east line of the Dyer Nuner survey, then all parties agreeing to said change and all parties who afterwards bought land from J. J. Snyder which was adjacent to and east of the said Hall tract with notice that the said east line of the Hall tract had been moved east would be bound by such change. In the third paragraph of said charge they were instructed, in effect, that if J. J. Snyder did not extend the said Hall tract of 80 acres farther east while he owned all the land between said extended lines and the original east line of the said Nuner survey, or if the said Hall tract of land was extended east by J. J. Snyder, as above instructed, but that at the time that R. W. Caruthers purchased his land he had no notice of said fact and bought to the west line of the strip of land in controversy, or if the said Hall lines were extended by J. J. Snyder, but, as extended, no part of the same was within the inclosure of the appellant, to find a verdict in his favor. This charge was a correct application of the law to the facts, and so guarded and protected the rights of appellant that he suffered no substantial injury by the refusal of the special charge.

Assignments of error 18 and 20 complain of the court's refusal to give special charges Nos. 7 and 8, requested by the appellant, in which the jury is told that, if they find certain facts enumerated in said charges to exist, to find for the appellant. Neither of these assignments is entitled to considera-

tion, for the reason that no such statement as is required by the rules governing the briefing of cases is subjoined to either of said assignments. None of the evidence, if any, necessary to the establishment of the facts enumerated in the charges, to which the assignments relate, is stated, and to decide the question sought to be presented we would have to search the statement of facts for such evidence. This we are not required to do. The only statement made is as follows: "The special instruction No. '7' (Tr. pp. 13–14) and special instruction No. '8' (Tr. pp. 11–13) are correctly copied in the assignment."

The other assignments not discussed have either been disposed of against the appellant by what has already been said, or point out no reversible error.

The verdict of the jury is supported by the evidence and the judgment entered thereon in the court below will be affirmed.

Affirmed.

### On Motion for Rehearing.

The majority of the court adhere to the views expressed in the original opinion and appellant's motion for a rehearing will be overruled.

The writer, however, after further consideration of the case upon the motion for a rehearing, has reached the conclusion that appellant showed an outstanding title in John A. Snyder, and therefore the appellee was not entitled to recover. It appears without dispute that some years prior to the purchase of the land in controversy by the appellee and those under whom he claims J. J. Snyder, the common source, by a warranty deed reciting a valuable consideration, conveyed said land to John A. Snyder, and there is no evidence whatever that J. J. Snyder after such conveyance reacquired the land. In the case of Ferguson v. Ricketts, 93 Tex. 565, 57 S. W. 19, Martin, the common source, derived his title to the land involved in that suit, directly from the original grantee, Gregoria Garcia. About 22 years prior to the conveyance of the land to Martin, Garcia sold and transferred the same to Adolphus Stern. In holding that the facts stated showed a superior outstanding title in Stern, the Supreme Court, speaking through Mr. Justice Brown, said: "The government was the common source as to Martin and Stern. The latter, having the prior conveyance, had the superior title. There was no chance for Stern's title to be in the chain of the common source, because the direct connection of Martin with Garcia necessarily excluded the conveyance to Stern. No presumption arises that the common source has acquired an independent outstanding title. Such presumption would nullify the rule that the title of the common source may be attacked by showing a superior outstanding title."

Here, notwithstanding the rule as to proof of common source that when one accepts a conveyance from another the presumption arises, as against the grantee, of title in the grantor, the Supreme Court, although there was no evidence to rebut such presumption, refused, because of the direct connection of Martin with Garcia, to apply such rule and indulge the presumption that either Garcia, before his conveyance to Martin, the common source, had reacquired the land from Stern or his grantees, or that Martin had acquired it. If, therefore, there was no chance for Stern's title to be in the chain of common source and the presumption could not be indulged that the common source had the title from the state, then it would seem to necessarily follow that where, as in the case at bar, the outstanding title emanates directly from the common source, such presumption could not be indulged. By the deed from J. J. Snyder, the common source of title in this case, to John A. Snyder, whatever title the former had in the land in controversy passed to and vested in the latter, and to hold that J. J. Snyder had reacquired the land before his conveyance to the Halls under whom appellee claims such acquisition must be presumed under the facts of this case. Applying the principle of the Ferguson-Ricketts Case, which I believe controls the decision of the question, this cannot be done. I do not think that either such possession as J. J. Snyder had of the land at the time he sold the same to H. T. Hall and W. D. Hall, or his assumption of ownership at that time, or the relationship which existed between him and John A. Snyder, materially affects the question.

I am therefore of the opinion that appellant's motion for a rehearing should be granted, and the judgment reversed. The majority of the court, however, takes a different view of the matter, and the motion is overruled.